This appeal is a constitutional attack, on equal protection and due process (gender-based) grounds, of the "old" Homestead Act (Title 7, § 663, Code 1940, the forerunner of § 6-10-62, Code 1975, which latter statute substituted "spouse" for "widow").
James Ransom, a resident of Russell County, Alabama, died intestate on October 7, 1972. He left surviving him a widow, Jessie Lee Ransom, the appellee. Mr. Ransom had no children and his parents predeceased him. His next of kin at the date of his death, the appellants, were his brothers and sisters.
At the date of his death, Mr. Ransom owned an undivided one-half interest in a small parcel of real estate located in Russell County, where he lived with his wife. He owned no other real estate.
On August 6, 1980, Jessie Lee Ransom sought to have this undivided one-half interest set apart to her as homestead pursuant to § 6-10-62, Code 1975. There had been no previous administration with respect to Mr. Ransom's estate. Commissioners were appointed to appraise the realty and returned their report setting apart the property as requested on August 8, 1980. Notice of this action was given to the heirs at law as provided by statute.
The heirs appeared at the hearing set for September 23, 1980, and filed written objection to the setting apart of homestead, alleging that: (1) § 6-10-62 was inapplicable because Mr. Ransom died prior to its enactment; (2) the applicable section, Code of Alabama 1940 (Recomp. 1958), Title 7, § 663, is violative of equal protection since it mandates unlawful gender based discrimination; and (3) the real estate descended to the next of kin by virtue of statute.
Mrs. Ransom then amended her application to have homestead set apart under the earlier code section.
On October 6, 1980, the matter was again heard and homestead was set apart to Jessie Lee Ransom and approved by the Probate Court. The intestate's siblings appeal.
Two dispositive issues are presented:
1. Whether Title 7, Section 663 (the homestead act in effect at the time of intestate's death), is violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.
2. If so, whether the homestead act (of the 1940 Code) must be terminated, thus denying its benefits to the class of persons therein specified; or whether its scope may be judicially expanded, thus according it constitutional validity.
We agree with appellants that because James Ransom died on October 7, 1972, the controlling homestead and descent statutes are Title 7, § 663, and Title 16, § 1 (5), (6), Code 1940,[1]
respectively, Mordecai v. Scott, 294 Ala. 626, 320 So.2d 642
(1975). *Page 748 
That the homestead act, which uses the operative word "widow," is gender-based and beyond rational support as against a constitutional challenge is not fairly debatable. Orr v. Orr,440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); Peddy v.Montgomery, 345 So.2d 631 (Ala. 1977). Thus, we answer the first issue in the affirmative.
Because its defect is one of underinclusion (i.e., benefiting only the widow and not the widower), our declaration of the Act's invalidity, however, does not automatically, and of itself, necessitate its termination.
This precise point is addressed by the Court of Civil Appeals in Orr v. Orr, 374 So.2d 895 (Ala.Civ.App. 1979):
 Where a statute is constitutionally infirm on the basis of underinclusiveness, a court may satisfy the Constitution's commands by either extending benefits to those excluded from the scope of its coverage or by invalidation of the statute in its entirety. Orr, supra; Welsh v. U.S., 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). In Welsh, supra, the Supreme Court stated:
 Where a statute is defective because of underinclusion there exist two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion. . . . (Citations omitted.) 393 U.S. at 361, 90 S.Ct. at 1807-1808, Harlan, J., concurring.
 Courts have on a number of occasions remedied the deficiencies in underinclusive statutes by extending benefits to those impermissibly excluded. See, e.g., Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); Weinberger v. Wissenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1965); White v. Crook, 251 F. Supp. 401
(M.D.Ala. 1966); Beal v. Beal, Me., 388 A.2d 72
(1978). See also Eich v. Town of Gulf Shores, 293 Ala. 95, 300 So.2d 354 (1974).
As between declaring the Act invalid or expanding the scope of its applicability, we choose the latter and hold that the remedial alternative of expansion rather than invalidation of the whole is more in keeping with the history of the legislative purpose of the homestead act.
As the Orr Court, 374 So.2d at 897, stated:
 The choice between invalidation of a statute or expansion of the scope of its applicability requires, of necessity, an ascertainment of the predominant legislative purpose underlying the statute's enactment. Beal, supra. That is to say, given the nature and substance of the statute, its relevant economic, social, and historical implications, can it be concluded that benefits should be terminated to the class of persons whom the legislature intended to benefit. In this instance, we think not.
Applying the Orr test — for extension vel non of coverage of an underinclusive statute — to the homestead statute here challenged, we draw the same conclusion as that reached in Orr.
For this Court to declare the homestead act a nullity (the remaining remedial alternative suggested by Mr. Justice Harlan in Welsh), thus "order[ing] that its benefits not extend to the class that the legislature intended to benefit," would be in defiance of the Act's "relevant economic, social, and historical implications."
For the purposes here pertinent, we believe the following language from Harrod v. Farmer, 273 Ala. 298, 139 So.2d 115
(1962), amply supports our application of the expansion doctrine:
 As we pointed out in our recent case of Durham v. Mims, 269 Ala. 477, 114 So.2d 245 (in which case we went somewhat into the history of the legislation) the homestead statute confers no right upon *Page 749 
decedent's collateral heirs, grants to them no exemption, nor vests in them any title to decedent's homestead property. Whatever title such heirs have or may have, in the absence of a will, arises out of and depends upon the statute of descent and distribution. — Code, Title 16, § 1. Provision has been consistently made in the homestead statute whereby the interests of collateral heirs may be protected, such as notice and opportunity to appear and be heard in proceedings to set aside homesteads. We have said that the only grounds given "other heirs" of decedent on which they may contest exemptioners' right to have homestead set apart are that it exceeded the amount and value of the exemption allowed and was not all the real estate owned by decedent at the time of his death. Obviously, however, the right of contest on the part of such heirs could arise only where there are no children or descendants of deceased children of the homestead owner, and could arise only as against the widow, the only other homestead exemptioner, this for the reason that collateral heirs, such as brothers and sisters, are by the descent statute subordinated, in order of inheritance, to children and descendants of deceased children of the decedent. The result has been that the widow, except to a very limited extent, has been placed in a position inferior to that of the collateral heirs named in the descent statute. The effect of the amendments of §§ 661 and 663 is to place the widow in a more advantageous position than she had previously occupied, enabling her not only to occupy but to obtain title to the homestead of her deceased husband unlimited as to value, yet limited to 160 acres in area, where there are not debts of the estate or they have been paid by her. We are unable to say that this effect was not intentional on the part of the legislature in amending the statute.
We hold (in keeping with the handling in Orr), just as in the alimony statute challenged in Orr, the legislative intent to provide Mrs. Ransom a right of homestead in her deceased husband's one-half interest in the homeplace is better effectuated by breathing into the Act constitutional validity than by declaring the Act a nullity.
AFFIRMED.
MADDOX, FAULKNER, JONES, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and ALMON, EMBRY and BEATTY, JJ., concur in the result.
[1] Title 16, § 1, Code 1940, is codified in the 1975 Code as §43-3-1 which, as last amended, altered the priority of a widow from place number six to place number two in the course of descents, effective as of May 28, 1980.